UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT J. BINDER, an individual and
shareholder of B&C Pharmacy, Inc., CAROL J.
WRUBLE, an individual, and B&C
PHARMACY, INC. a Michigan corporation,

        Plaintiffs,        CASE NUMBER: 09-14046
                              HONORABLE VICTORIA A. ROBERTS

v.

MEDICINE SHOPPE INTERNATIONAL, INC.,
a Delaware corporation,

        Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION

**I.    INTRODUCTION**

Robert W. Binder, Carol J. Wruble, and B&C Pharmacy, Inc. (together, "Plaintiffs") sued Defendant Medicine Shoppe International, Inc. ("MSI") on breach of contract and several related grounds. Jurisdiction arises from the parties' diversity: MSI is a Delaware corporation with its principal place of business in Dublin, Ohio, Mr. Binder and Ms. Wruble are Michigan residents, and B&C is a Michigan corporation.

MSI moves to compel arbitration of Plaintiffs' claims. (Dkt. #17.) The motion is fully briefed, and the Court decided that oral argument is not necessary. *See* E.D. Mich. L.R. 7.1(e)(2) (Court may decide motions "on the briefs," without oral hearing).

For reasons stated, the motion is **GRANTED**.

**II.    BACKGROUND**

In 1997, Plaintiffs entered into discussions to acquire a Medicine Shoppe franchise in Michigan. During the negotiations, MSI sent Plaintiffs a Uniform Franchise

Offering Circular ("the Offering Circular") containing various disclosure documents required by federal and state law. (Pls.' Resp. Ex. 4 [hereinafter UFOC].) In August 1998, Mr. Binder executed a License Agreement on B&C's behalf to operate a Medicine Shoppe store in Fenton, Michigan. (Pls.' Resp. Ex. 5 [hereinafter Lic. Agr't.].) The License Agreement states that "all controversies, disputes or claims" between MSI and B&C must be submitted for arbitration by the American Arbitration Association ("AAA") in St. Louis, Missouri. (*Id.* at § 14(G).)

Concurrent with the signing of the License Agreement, Mr. Binder and Ms. Wruble executed an "Owner's Guaranty and Assumption of Licensee's Obligations" ("the Guaranty"), pursuant to which they agreed to be personally bound by the License Agreement.

For 12 years, the parties operated under the terms of the License Agreement. In April 2009, MSI initiated arbitration proceedings against Plaintiffs in St. Louis. In June 2009, B&C filed an answering statement and asked to transfer arbitration to the AAA's office in Southfield, Michigan. (MSI's Reply Ex. B.) This request was denied.

On September 2, 2009, MSI and B&C participated in a telephone conference with the arbitrator. Ms. Wruble attended this discussion in her capacity as a B&C officer; however, she and Mr. Binder claim they did not personally avail themselves of arbitration, whether by paying fees, filing responses, motions or counterclaims. MSI does not state otherwise.

At the conference on September 2, MSI and B&C agreed on a preliminary scheduling order and were given three months to raise jurisdiction-related issues. On September 14, Plaintiffs began this action in Michigan state court, which MSI removed

2

to this Court.  Meanwhile, MSI and B&C exchanged discovery requests and documents, in accordance with the scheduling order.

On October 30, 2009, Plaintiffs filed their Amended Complaint.  (Dkt. #5.)  This pleading states several new claims not asserted before the arbitrator or in state court, including allegations that MSI fraudulently induced Plaintiffs to enter into the License Agreement, and that the arbitration clause violates Michigan's Franchise Investment Law, Mich. Comp. Laws ("M.C.L.") § 445.1501 et seq.

Plaintiffs' newly-added claims are based on statements and representations contained in the Offering Circular.  The Offering Circular is a state-specific document, updated on a yearly basis.  (UFOC at 1.)  It compiles information which, under federal and state law, must be provided to potential franchisees before they sign a binding franchise agreement.  *See* 16 C.F.R. § 436.1-11; M.C.L. § 445.1501 et seq.  The Offering Circular states, *inter alia*:

> THE STATE OF MICHIGAN PROHIBITS CERTAIN UNFAIR PROVISIONS THAT ARE SOMETIMES IN FRANCHISE DOCUMENTS.  IF ANY OF THE FOLLOWING PROVISIONS ARE IN THESE FRANCHISE DOCUMENTS, THE PROVISIONS ARE VOID AND CANNOT BE ENFORCED AGAINST YOU.
> Each of the following provisions is void and unenforceable if contained in any documents relating to a franchise:
> . . .
> (f) A provision requiring that arbitration or litigation be conducted outside this state.  This shall not preclude the franchisee from entering into an agreement, at the time of arbitration at a location outside this state.

(UFOC at ii-b.)

As noted above, the License Agreement requires that disputes be arbitrated in St. Louis, Missouri.  Moreover, on the last page, directly above where Mr. Binder signed

his name, the License Agreement states: "THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." (Lic. Agr't at 25.)

In November 2009, MSI offered to relocate arbitration in Michigan, in exchange for dismissal of Plaintiffs' lawsuit (Mot. Ex. A); Plaintiffs refused. Subsequently, MSI filed this motion to compel arbitration in St. Louis. Alternatively, MSI asks the Court to sever the arbitration clause's venue provision, and let the AAA decide the proper forum.

### III. APPLICABLE LAW

The Court begins by outlining federal arbitration law, before turning to whether this dispute is arbitrable.

#### A. The Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., "establishes a statutory scheme for effectuating the federal policy of encouraging arbitration as a less costly and less complicated alternative to litigation." *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1165 (8th Cir. 1984). Under § 2 of the FAA,

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

When a party to an arbitration agreement refuses to participate, the opposing party may petition for relief in federal district court. "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court must compel arbitration according to the agreement's terms. 9 U.S.C. § 4. *See also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (FAA leaves district courts

4

"no place for the exercise of discretion" in compelling arbitration of arbitrable claims).

Neither party disputes that the License Agreement is a transaction involving interstate commerce. Therefore, if the Court finds the Arbitration Clause valid and the dispute arbitrable, the FAA will govern.

### B. Determination of Arbitrability

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (*quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Therefore, "[w]hile the courts must respect 'the liberal federal policy favoring arbitration agreements,' . . . the underlying question of whether the parties agreed to arbitrate is to be 'decided by the court, not the arbitrator.'" *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *AT&T Techs.*, 475 U.S. at 649) (other citations omitted). To determine if a dispute is arbitrable, a court must determine whether "a valid agreement to arbitrate exists," and if so, whether "the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (*citing AT&T Techs.*, 475 U.S. at 649).

A party who claims that an agreement to arbitrate is defective must raise a genuine issue of material fact concerning the validity of that agreement. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (*citing Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir.), *cert. denied*, 522 U.S. 948 (1997)). "The required showing mirrors that required to withstand summary judgment in a civil suit."

*Id.* Therefore, the court must construe the evidence and draw all reasonable inferences in the light most favorable to the non-moving party, in order to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. County of Lenawee*, 600 F.3d 686 (6th Cir. 2010); *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248; *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008). By contrast, there is no genuine issue if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 586; *Savedoff*, 524 F.3d at 762.

      **C.    Applicable Law of Contracts** (Pls.' Resp. 11 n.42; MSI Reply 6)

In determining the validity of an agreement to arbitrate, courts look to applicable state law governing the formation of contracts. *First Options v. Kaplan,* 514 U.S. 938, 944 (1995) (*citing Perry v. Thomas*, 482 U.S. 483, 492-93 n.9 (1987)); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 314 (6th Cir. 2000). However, even as they apply state law, courts must heed the strong federal policy favoring arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (*citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985)). Thus, ambiguities in the language of the contract or the intent of the parties must be resolved in favor of arbitration.

      MSI contends that the Court should apply Missouri law, because the License

Agreement expressly identifies Missouri's law as governing. (Lic. Agr't § 14(H).) Plaintiffs object that Michigan law should apply, because its interest in this issue outweighs Missouri's.

A federal court sitting in diversity applies the law and choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 798 (6th Cir. 2007) (*citing Westfield Ins. Co. v. Tech Dry Inc.*, 336 F.3d 503, 506 (6th Cir. 2003)). "Michigan choice of law rules . . . require a court to balance the expectations of the parties to a contract with the interests of the states involved to determine which state's law to apply." *Equitable Life Assurance Society of the U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998) (*citing Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 528 N.W.2d 698, 703 (Mich. 1995)). In making this determination, a court may use §§ 187 and 188 of the Restatement (Second) of Conflict of Laws as guidance. *Chrysler*, 528 N.W.2d at 703; *Mill's Pride v. Continental Insurance Co.*, 300 F.3d 701, 705 (6th Cir. 2002).

Under § 187, of the Restatement (Second), if the parties could have resolved their dispute by an express contractual provision, the law designated by the contract applies, unless: (a) the chosen state has no substantial relationship to the parties or the transaction, and there is no other reasonable basis for the parties' choice; or (b) the law of the chosen state runs counter to a fundamental policy of the state whose law would apply in the absence of a choice-of-law clause, and that state has a materially greater interest than the chosen state in the determination of the issue. *Martino v. Cottman Transmission Sys.*, 218 Mich. App. 54, 554 N.W.2d 17, 21 (Mich. Ct. App. 1996).

7

The Court cannot discern a substantial relationship between the License Agreement and Missouri, or a reasonable alternative basis for Missouri law to apply. Plaintiffs are Michigan citizens who entered into a franchise agreement with MSI, a Delaware corporation based in Ohio, to operate a Medicine Shoppe pharmacy in Michigan. On its face, this transaction has no connection to Missouri; on the other hand, there is a substantial relationship with Michigan, since performance is to take place almost exclusively in the state, over a 20-year period.

The License Agreement's only apparent connection with Missouri is the parties' obligation to arbitrate conflicts in St. Louis. The prospect of hosting a hypothetical proceeding between two non-citizens, on an out-of-state contract, is not a "substantial relationship." Moreover, the designation of St. Louis as arbitral forum is not, by itself, a "reasonable basis" for choosing Missouri law.

Michigan undisputably has a greater interest in ensuring that in-state businesses like B&C receive the full protection of its laws. By contrast, Missouri's stake in this dispute is minimal. Therefore, the Court holds that Michigan contract law governs.

## IV.   ANALYSIS

### A.   Preliminary Matters

Before turning to the merits, the Court addresses MSI's claim that Plaintiffs waived their right to challenge arbitration in court, and Mr. Binder and Ms. Wruble's contention that they are not personally bound by the arbitration clause.

#### 1.   Waiver

MSI argues that Plaintiffs waived their right to oppose arbitration because they

took part in proceedings before the arbitrator. Acting through its officers, B&C responded to MSI's statement of claim and complied with requests for discovery. (B&C Aff. ¶ 4.) B&C also formally objected to arbitration in St. Louis, and asked to transfer proceedings to Michigan. (MSI Reply Ex. B.) MSI contends that, by these actions, Plaintiffs waived their right to challenge arbitration in court.

Plaintiffs argue that B&C continuously objected to arbitration, and participated only to the extent necessary to protect its interests. Mr. Binder and Ms. Wruble also contend, and MSI appears to concede, that they did not appear before the arbitrator in their personal capacities, or participate in the proceedings other than as representatives of B&C. Plaintiffs argue this behavior does not amount to waiver.

Neither party cites case law in support. Many courts hold that a party cannot "await the outcome [of arbitration] and then later argue that the arbitrator lacked authority to decide the matter." *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1149 (10th Cir. 2007). *Accord Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006); *Four Seasons Hotels & Resorts v. Consorcio Barr S.A.*, 377 F.3d 1164, 1171 & n.5 (11th Cir. 2004); *Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc.*, 320 F.3d 362, 368 (2d Cir. 2003). The common thread among these decisions is that a party must explicitly object to arbitration before the proceedings are too far advanced. However, there appears to be no bright line that delineates when waiver occurs.

Regardless of where this threshold precisely lies, the Court is satisfied that these proceedings have not yet exceeded it. On September 2, 2009, the arbitrator entered a preliminary scheduling order which gave the parties until November 30 to challenge jurisdiction. Less than two weeks later, Plaintiffs filed a state-court complaint seeking,

9

*inter alia*, declaratory judgment that Mr. Binder and Ms. Wruble are not bound by the arbitration clause. On October 30, after removal, Plaintiffs amended their complaint, adding claims for fraudulent inducement and violation of the Franchise Investment Law. By filing this suit, Plaintiffs gave clear notice of opposition to arbitration. In addition, the proceedings were still in their early stages when Plaintiffs made their objections known. Although B&C and MSI exchanged some documents, there is nothing to suggest that discovery is close to complete, let alone that the merits phase has begun. Finally, MSI does not allege any significant prejudice from Plaintiff's attempt to terminate arbitration.

The Court holds that Plaintiffs' objections were made clearly and early enough in the proceedings, so that Plaintiffs preserved their right to challenge arbitration in court.

### 2. Parties Bound by Agreement to Arbitrate

Mr. Binder and Ms. Wruble claim they are not personally required to submit to arbitration under the terms of the Guaranty. This is incorrect.

The Sixth Circuit recognizes that "nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles." *Javitch*, 315 F.3d at 629 (*citing Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990)). A nonsignatory can be bound by an agreement to arbitrate under five theories: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel. *Id.* (*citing Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).

The full title of the Guaranty, "Owner's Guaranty and Assumption of Licensee's Obligations," leaves no doubt as to its purpose and effect. In signing this document, Mr. Binder and Ms. Wruble agreed to be "personally . . . bound by, and personally liable for breach of, each and every provision" in the License Agreement. (Pls.' Resp. Ex. 5.)

10

The wording of the Guaranty leaves no doubt that Mr. Binder and Ms. Wruble assumed B&C's obligations under the License Agreement.

Mr. Binder and Ms. Wruble are also bound under an estoppel theory. Estoppel arises when a nonsignatory who obtains a direct contractual benefit seeks to disavow that agreement's arbitration clause. *Javitch*, 315 F.3d at 629 (*citing Thomson-CSF*, 64 F.3d at 778-79). The Guaranty recites that its purpose is to serve as consideration for, and as an inducement to, MSI's signing of the License Agreement. Since Mr. Binder and Ms. Wruble derived a direct benefit from their contract with MSI, they are estopped from disclaiming the obligation to arbitrate.

### B. Fraudulent Inducement

Plaintiffs claim they were misled into believing that MSI would not try to arbitrate potential disputes. MSI responds that the agreement to arbitrate is valid on its face, and that nothing suggests Plaintiffs' agreement was secured by fraud.

"The Supreme Court has explained that in deciding whether a valid agreement to arbitrate exists, district courts may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole[.]" *Great Earth Cos. v. Simons*, 288 F.3d 878, 890 (6th Cir. 2002) (*citing Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)).

Plaintiffs' claim is specific to the arbitration clause. During the negotiation, MSI gave Plaintiffs an Offering Circular, which states that Michigan law prohibits franchise agreements from requiring out-of-state arbitration, and that any provision to that effect is void and unenforceable. M.C.L. § 445.1527(f). In fact, however, this restriction is preempted by the Supremacy Clause of the United States Constitution, Art. VI, cl. 2,

and the FAA.  *See Flint Warm Air Supply Co. v. York Int'l Corp.*, 115 F. Supp. 2d 820 (E.D. Mich. 2000) (Rosen, J.); *Alphagraphics Franchising, Inc. v. Whaler Graphics, Inc.*, 840 F. Supp. 708 (D. Ariz. 1993).  Therefore, Michigan's statutory prohibition on out-of-state arbitration is without effect.

Plaintiffs contend that they relied on the Offering Circular as a truthful and meaningful reflection of the parties' agreement to forego arbitration if the License Agreement included a requirement to arbitrate in St. Louis.  They claim that, had they known MSI would invoke FAA preemption to compel arbitration, they would not have signed the License Agreement.

In Michigan, "[f]raud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Samuel D. Begola Servs. v. Wild Brothers*, 210 Mich. App. 636, 534 N.W.2d 217, 219 (Mich. Ct. App. 1995) (*citing Kefuss v Whitley*, 220 Mich. 67, 82-83; 189 N.W. 76 (Mich. 1922)) (other citations omitted).  Fraudulent inducement does not automatically void the contract, but makes it voidable at the option of the defrauded party.  *Id.* (*citing Whitcraft v. Wolfe*, 148 Mich. App. 40, 384 N.W.2d 400, 405 (Mich. Ct. App. 1985)).  Since fraudulent inducement is a tort, and not a contract claim, parol evidence is generally admissible. *UAW-GM Human Resource Ctr. v. KSL Rec. Corp.*, 228 Mich. App. 486, 579 N.W.2d 411, 418 (Mich. Ct. App. 1998).  However, in contracts which include a merger clause, parol evidence is admissible only if it relates to representations of fact made by one party to induce another to enter into the agreement.  *Star Ins. Co. v. United Commercial Insurance Agency, Inc.*, 392 F. Supp. 2d 927, 928-29 (E.D. Mich. 2005) (Tarnow &

Pepe, JJ.) (*citing* 3 Corbin, *Contracts* § 580, at 142 (1960 ed.), *cited with approval in LIAC, Inc. v. Founders Ins. Co.*, 222 Fed. Appx. 488, 493 (6th Cir. 2007) (unpublished).

### 1. Material Misrepresentation of Future Conduct

The Court must first determine whether the Offering Circular misrepresented MSI's future conduct in a way that was material to Plaintiffs' decision to sign the franchise agreement. For this prong of the analysis, the Court finds persuasive the analysis of the court in *Great Earth Cos. v. Simons*, No. 00 Civ. 0967, 2000 WL 310354, 2000 U.S. Dist. LEXIS 3772 (S.D.N.Y. Mar. 24, 2000) (unpublished).

In *Great Earth*, a Michigan resident licensed a Great Earth franchise, under an agreement which provided for arbitration in New York State. 2000 U.S. Dist. LEXIS 3772, at *2-3. During negotiations, the franchisee had received an offering circular identical, in all material respects, to the one MSI gave Plaintiffs. *Id.* at *11. When Great Earth filed for arbitration in New York, the franchisee objected on fraudulent inducement grounds. *Id.* at *10-11. After finding that New York and Michigan define fraudulent inducement in similar terms, the court ruled that the offering circular failed to disclose Great Earth's intent to rely on FAA preemption to compel arbitration in New York, and that this omission was material as a matter of law. *Id.* at *12-13, 15-16.

The *Great Earth* analysis is directly applicable here. The Offering Circular misrepresented MSI's future conduct by implying that it would not resort to arbitration. At the very least, the inconsistency between the Offering Circular and the License Agreement created an ambiguity which MSI had a duty to explain. *See id.* at *13 (*citing* Restatement (Second) of Contracts § 161(a) (failure to disclose a fact may constitute a misrepresentation where disclosure is necessary to prevent a prior statement from

13

being a misrepresentation)). Moreover, longstanding principles of contractual law dictate that "ambiguous contractual language will be construed against the drafter of the contract." *Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 865 (6th Cir. 2006) (quotation omitted); *accord Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 664 N.W.2d 776, 787 (2003).

The Offering Circular's misrepresentation was also material as a matter of law, because it had "a natural tendency to influence, or [was] capable of influencing, the decision of the decision-making body to which it was addressed." *Neder v. United States*, 527 U.S. 1, 16 (1999) (*quoting United States v. Gaudin*, 515 U.S. 506, 509 (1995)); *United States v. Birnie*, 193 Fed. Appx. 528, 534 (6th Cir. 2006) (unpublished). *See also Great Earth*, 2000 U.S. Dist. LEXIS 3772, at *16 ("A franchisee is warranted in taking into account, when signing a franchise agreement, sections of the Offering Circular specifically directed at franchisees of his state and which have objective economic and strategic significance.").

### 2. Reasonable Reliance

Plaintiffs claim they relied on the Offering Circular for the principle that MSI would not compel them to arbitrate. MSI argues that, at most, Plaintiffs thought they would not have to arbitrate in Missouri, not that they could avoid arbitration altogether.

In *Great Earth*, the franchisee testified that, when he signed the agreement, he understood disputes would be arbitrated, but thought proceedings would take place in Michigan, not New York. 2000 U.S. Dist. LEXIS 3772, at *16-17. The district court credited this testimony and ordered the parties to arbitrate in Michigan. Nevertheless, the court added, "[w]ere we writing on a blank slate, we would find that there was no

14

meeting of the minds not only with respect to the arbitration clause's forum selection provision, but also with respect to the arbitration clause as a whole." *Great Earth Cos. v. Simons*, No. 00 Civ. 0967, 2000 WL 640829, 2000 U.S. Dist. LEXIS 6889, at *3-4 (S.D.N.Y. May 17, 2000) (unpublished). Subsequently, the franchisee asked the court to rescind its order, on grounds that there was no meeting of the minds regarding arbitration as a whole. The court granted the request, withdrew the order to arbitrate, and redacted the opinion to remove the "blank slate" language quoted above. The court admitted it was "somewhat surprised" by the franchisee's request, given his earlier testimony, but agreed that this part of the opinion was "unnecessary for the resolution of the precise question presented." *Id.* at *3.

The Court must decide not only whether Plaintiffs relied on the Offering Circular, but also to what extent. Plaintiffs urge the Court to follow *Great Earth*'s original intent and set the entire arbitration clause aside. They argue that, contrary to the franchisee in *Great Earth*, their misgivings about arbitration were not limited to its location, but to its designation as the only way to resolve disputes.

The evidence before the Court shows that Plaintiffs relied on the Offering Circular, but only to the extent that they would not have to arbitrate outside of Michigan. Plaintiffs' response to MSI's demand for arbitration does not reflect surprise, much less objection to, arbitration *per se*. When MSI initiated proceedings, Plaintiffs did not object to the procedure itself, but simply asked to transfer venue to Michigan. When their request was denied, Plaintiffs filed suit in state court, again without objecting to arbitration. The first time Plaintiffs formally challenged arbitration was in their amended complaint, over six months after proceedings began.

Plaintiffs argue that, under the notice pleading system of the Federal Rules of Civil Procedure, they were not obligated to assert every claim against MSI immediately upon filing this action. That is true. However, Plaintiffs' delay in challenging arbitration shows they were not as blind-sided as they claim. In any case, timing is only a small factor in the Court's decision; the substance of Plaintiffs' request to transfer venue is much more illuminating.

Plaintiffs' request begins with typical venue-related arguments: Missouri has no jurisdiction over B&C, all relevant records, documents and witnesses are in Michigan, and arbitrating in Missouri will force Plaintiffs to incur excessive additional costs. (MSI's Reply Ex. B at ¶¶ 1-13.) Then, Plaintiffs argue that two of MSI's claims, for breach of non-compete agreement and trademark infringement, are not arbitrable. (*Id.* at ¶¶ 14-15.) The License Agreement expressly places such matters beyond the scope of arbitration. (Lic. Agr't § 14(G).) However, even as they oppose arbitrating these disputes, Plaintiffs do not contest jurisdiction over MSI's other claims.

The Court finds that Plaintiffs raise no genuine issue of material fact about their knowledge and understanding that, by entering into the License Agreement, they would be required to arbitrate disputes. Plaintiffs are savvy businesspeople, represented by competent counsel. Most importantly, their submissions to the arbitrator and in state court show they understood themselves to be bound by the requirement to arbitrate. The lack of an admission, as in *Great Earth*, does not negate evidence that Plaintiffs were willing to participate in arbitration. However, their immediate challenge to venue shows Plaintiffs did not anticipate being forced to travel to Missouri to resolve a dispute with absolutely no relation to that state.

The Court finds that MSI misrepresented its intention to invoke FAA preemption in order to compel arbitration outside of Michigan, and that Plaintiffs relied on these assertions when signing the agreement. Therefore, the License Agreement is voidable, but only to the extent that it requires arbitration to take place in St. Louis, Missouri.

### C. Severability of Venue Provision

Since Plaintiffs cannot be forced to arbitrate in Missouri, the next question is whether the venue provision can be severed from the rest of the contract. The License Agreement states that, aside for a few specific exceptions,

> each section, paragraph term and provision of this Agreement, and any portion thereof, shall be considered severable. In, for any reason, any such provision of this Agreement is held to be invalid, . . . that ruling shall not impair the operation of, or have any other effect upon, such other portions of this Agreement as may remain otherwise intelligible. All such portions shall continue to be given full force and effect and to bind the parties hereto . . .

(Lic. Agr't § 14(C).)

This clause displays the parties' intent to preserve their agreement, in its most complete form and to the extent possible, if any term or provision is held invalid. Removing the venue provision does not affect the rest of the License Agreement, or alter the parties' rights and obligations. Therefore, the proper solution is to sever the venue requirement and compel arbitration in a manner consistent with the rest of the agreement. This is consistent with the general rule of law, recognized in Michigan, that "where provisions of a contract are rescinded due to fraudulent inducement, 'the failure of a distinct part of a contract does not void valid, severable provisions.'" *Great Earth*, 288 F.3d at 890 (*quoting Samuel D. Begola Servs.*, 534 N.W.2d at 220).

### D. Situs of Arbitration

17

Plaintiffs claim arbitration cannot occur if the venue provision is removed from the License Agreement. MSI contends the Court can compel arbitration, but not designate the proper venue. The Court disagrees with these assertions.

Plaintiffs argue that arbitration may be compelled only "in the manner provided for in [the] agreement." 9 U.S.C. § 4. Since the License Agreement does not identify an alternative to St. Louis, Plaintiffs assert that holding proceedings in Michigan would not be "in the manner provided." This notion contravenes the well-established federal policy in favor of arbitration. *Moses H. Cone Memorial Hosp.*, 460 U.S. at 25. The Court cannot discard a valid agreement to arbitrate on the sole basis of a faulty venue provision. *See Morrison v. Circuit City Stores*, 317 F.3d 646, 675 (6th Cir. 2003) ("when the arbitration agreement at issue includes a severability provision, courts should not lightly conclude that a particular provision of an arbitration agreement taints the entire agreement.") (*citing Great Earth*, 288 F.3d at 890-91).

MSI claims the License Agreement requires the venue determination to be left to the AAA. (*See* Lic. Agr't § 14(G) ("arbitration proceedings shall be conducted in St. Louis, Missouri and, . . . such claims shall be heard by one arbitrator in accordance with the then current Commercial Arbitration Rules of the [AAA].").) The language on which MSI relies pertains to the arbitral process itself, not the choice of situs. Furthermore, since this Order effectively precludes arbitration outside of Michigan, the only alternative is to hold the proceedings in-state; therefore, referring the matter to the AAA is unnecessary. Lastly, at different times in the litigation, each party indicated a willingness to arbitrate in Michigan. (Mot. Ex. A; MSI's Reply Ex. B.)

Upon information, the only AAA office in Michigan is in Southfield, in the Detroit

metropolitan area. That is where this arbitration must take place.

## IV. CONCLUSION

For reasons stated, the Court **GRANTS** Defendant Medicine Shoppe International, Inc.'s Motion to Compel Arbitration. (Dkt. #17.) The arbitration under way in St. Louis, Missouri, must be transferred to the AAA's office in Southfield, Michigan.

**IT IS ORDERED**.

                                                        s/Victoria A. Roberts  
                                                        Victoria A. Roberts  
                                                        United States District Judge

Dated: July 20, 2010

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 20, 2010.
>
> s/Linda Vertriest  
> Deputy Clerk